7

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Douglas Murphy,
      Plaintiff

v.

Stewart Painton;
Graham Andes;
John Merrick;
Paul Stouffer;
Richard Meanix;
Thomas Wagner;
C. Curtis Norcini;
Chester County
Public Defenders Office;
Thomas Ost-Prisco;
Joseph Carroll; and
The Chester County
Court of Common Pleas;

      ~~Defendants~~

Jane/John Doe Defendants
Numbered 1-20,
      Defendants

CASE NO.

04 CV 22

FILED

MICHAEL E. KUNZ, Clerk
By _____ Dep. Clerk

*Demand for Jury Trial*

THIS ACTION IS BROUGHT PURSUANT TO 42 U.S.C. 1983; THE FIRST; FIFTH; SIXTH; AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

JURISDICTION IS BASED ON 28 U.S.C. 1331 AND 1343 A (1),(2),(3) AND THE AFOREMENTIONED STATUTORY AND CONSTITUTIONAL PROVISIONS. PLAINTIFF FURTHER INVOKES PENDENT JURISDICTION OF THIS HONORABLE COURT TO HEAR AND DECIDE CLAIMS ARISING UNDER STATE LAW.

PURSUANT TO 28 U.S.C. 1931 (b), THE VENUE OF THIS SUIT IS PROPER AS THE CLAIMS ARISE IN THE EASTERN DISTRICT OF PENNSYLVANIA. THE AMOUNT IN CONTROVERSY DOES EXCEED ONE HUNDRED THOUSAND DOLLARS ($100,000.00).

I. PARTIES:

1. THE PLAINTIFF, Douglas Murphy, INMATE NO. ES4677, IS PRESENTLY INCARCERATED IN SCI-Huntingdon 1100 Pike ST, Huntingdon, PA 16654-1112. PLAINTIFF IS A CITIZEN OF THE UNITED STATES, AND IS CURRENTLY PROCEEDING Pro Se IN THIS MATTER.

2. STEWART PAINTIN (HEREINAFTER "PAINTIN") WAS AT ALL TIMES RELEVANT HERETO HIS POSITION AS A PUBLIC DEFENDER, EMPLOYED By THE CHESTER COUNTY PUBLIC DEFENDERS OFFICE.

PLAINTIFF HAS OFFICES LOCATED AT THE PUBLIC DEFENDERS OFFICE, 17 N.CHURCH ST. 3rd FLOOR, WEST CHESTER, PA 19380. HE IS BEING SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

3. GRAHAM ANDES (HEREINAFTER "ANDES") WAS AT ALL TIMES RELEVANT HERETO HIS POSITION AS A PUBLIC DEFENDER, EMPLOYED BY THE CHESTER COUNTY PUBLIC DEFENDERS OFFICE. ANDES HAS OFFICES LOCATED AT 17N. CHURCH ST. 3rd FLOOR, WEST CHESTER, PA 19380. HE IS BEING SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

4. JOHN R. MERRICK (HEREINAFTER "MERRICK") WAS AT ALL TIMES RELEVANT HERETO HIS POSITION AS THE PUBLIC DEFENDER OF CHESTER COUNTY. MERRICK HAS OFFICES LOCATED AT 17 N. CHURCH ST. 3rd FLOOR, WEST CHESTER, PA 19380. HE IS BEING SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

5. RICHARD E. MEANIX (HEREINAFTER "MEANIX") WAS AT ALL TIMES RELEVANT HERETO HIS CAPACITY AS A COURT APPOINTED ATTORNEY, RETAINED BY THE COUNTY OF CHESTER, PA. MEANIX HAS OFFICES LOCATED AT 135 WEST MARKET ST. WEST CHESTER, PA 19382. HE IS BEING SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

6. THOMAS WAGNER (HEREINAFTER "WAGNER") WAS AT ALL TIMES RELEVANT HERETO HIS CAPACITY AS A COURT APPOINTED ATTORNEY, RETAINED BY THE COUNTY OF CHESTER, PA. WAGNER HAS OFFICES LOCATED AT 134 N. CHURCH ST. WEST CHESTER, PA 19380. HE IS BEING SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

7. C. CURTIS NORCINI (HEREINAFTER "NORCINI") WAS AT ALL TIMES RELEVANT HERETO HIS CAPACITY AS A COURT APPOINTED ATTORNEY, RETAINED BY THE COUNTY OF CHESTER, PA. NORCINI HAS OFFICES LOCATED AT 155 WEST LANCASTER AVE. PAOLI, PA 19301. HE IS BEING SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

8. CHESTER COUNTY PUBLIC DEFENDERS OFFICE (HEREINAFTER "P.D. OFFICE") WAS AT ALL TIMES RELEVANT HERETO IT'S CAPACITY AS THE PUBLIC DEFENDERS OFFICE. THE P.D. OFFICE HAS OFFICES LOCATED AT 17 N. CHURCH ST 3rd FLOOR WEST CHESTER, PA 19380.

9. THOMAS OST-PRISCO (HEREINAFTER "PRISCO") WAS AT ALL TIMES RELEVANT HERETO ASSISTANT DISTRICT ATTORNEY, EMPLOYED BY CHESTER COUNTY, PA. PRISCO HAS OFFICES LOCATED AT 17 N. CHURCH ST. P.O. BOX 2748 WEST CHESTER, PA 19380-0991. HE IS BEING SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

10. JOSEPH W. CARROll (HEREINAFTER "CARROll") WAS AT All TIMES RELEVANT HERETO THE DISTRICT ATTORNEY OF CHESTER COUNTY, PA. CARROll HAS OFFICES LOCATED AT 17 N. CHURCH ST. P.O. BOX 2748 WEST CHESTER, PA. 19380-0991. HE IS BEING SUED IN BOTH HIS Individual AND OFFICIAL CAPACITIES.

11. ~~JACQUELINE CODY~~ VOID on (HEREINAFTER "CODY") WAS AT All TIMES RELEVANT HERETO A Sitting JUDGE ON THE CHESTER COUNTY COURT OF COMMON PLEAS. CODY HAS CHAMBERS LOCATED AT 2 N. HIGH ST. WEST CHESTER, PA. 19380-0991. SHE IS BEING SUED IN BOTH HER Individual AND OFFICIAL CAPACITIES.

12. ~~WILLIAM P. MAHON~~ VOID on (HEREINAFTER "MAHON") WAS AT All TIMES RELEVANT HERETO A Sitting JUDGE ON THE CHESTER COUNTY COURT OF COMMON PLEAS. MAHON HAS CHAMBERS LOCATED AT 2. NORTH HIGH ST. WEST CHESTER, PA. 19380-0991. HE IS BEING SUED IN BOTH HIS Individual AND OFFICIAL CAPACITIES.

13. THE CHESTER COUNTY COURT OF COMMON PLEAS (HEREINAFTER "COURT OF COMMON PLEAS") WAS AT All TIMES RELEVENT HERETO THE CHESTER COUNTY COURT OF COMMON PLEAS. THE COURT OF COMMON PLEAS IS LOCATED AT 2 N. HIGH ST. WEST CHESTER, PA 19380-0991. THE COLLECTIVE MEMBERS OF THE COURT OF COMMON PLEAS ARE BEING SUED IN BOTH THEIR Individual AND OFFICAL CAPACITIES.

14. PAUL STOUFFER (SIC) (HEREINAFTER "STOUFFER(SIC)) WAS AT ALL TIMES RELEVANT HERETO HIS POSITION AS A PUBLIC DEFENDER EMPLOYED BY CHESTER COUNTY. HE IS BEING SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

II. FACTS GIVING RISE TO CAUSE(S) OF ACTION:

15. WHILE VISITING FROM HAWAII, THE PLAINTIFF RESIDED WITH MS. BETH FAILOR DURING THE SUMMER OF 2000.

16. PLAINTIFF WAS PAYING MONEY TO MS. FAILOR IN EXCHANGE FOR ROOM AND BOARD.

17. PLAINTIFF HAD PAID MONEY TO MS. FAILOR ON AT LEAST TWO OCCASIONS.

18. THE LAST PAYMENT MADE BY THE PLAINTIFF TO MS. FAILOR FOR RENT WAS ON SEPTEMBER 2, 2000 IN THE FORM OF $1,000 CASH.

19. ON SEPTEMBER 1, 2000 PLAINTIFF SIGNED OVER/ENDORSED A PAYROLL CHECK ISSUED TO THE PLAINTIFF IN THE AMOUNT OF $1,300.50, TO MS. FAILOR.

20. PLAINTIFFS PAYROLL CHECK WAS MADE PAYABLE TO DOUGLAS T. MURPHY CONSTRUCTION AND CARPENTRY, WAS IN THE AMOUNT OF $1,300.50, WAS ISSUED BY FORTRESS PA LLC DBA/IACOBUCCI HOMES, AND WAS DATED AUGUST 31, 2000. CHECK NO. 00002171

21. MS. FAILOR ACCEPTED PLAINTIFFS ENDORSED PAYROLL CHECK AS A RENT PAYMENT.

22. ON SEPTEMBER 1, 2000 MS. FAILOR ENDORSED THE PAYROLL CHECK (NO. 0003171) AND ATTEMPTED TO DEPOSIT SAME INTO HER PERSONAL CHECKING ACCOUNT AS CASH.

23. BECAUSE CHECK NO. 0003171 WAS MADE PAYABLE TO A BUSINESS, MS. FAILOR'S BANK WOULD NOT ACCEPT HER ENDORSEMENT.

24. PLAINTIFF WAS PRESENT WHEN MS. FAILOR ATTEMPTED TO DEPOSIT CHECK NO. 0003171 INTO HER ACCOUNT.

25. ON SEPTEMBER 2, 2000 PLAINTIFF, IN THE COMPANY OF MS. FAILOR, CASHED CHECK NO. 0003171 AT A BRANCH OF THE ISSUING BANK.

26. ON SEPTEMBER 2, 2000 PLAINTIFF HANDED MS. FAILOR $1,000.00 CASH AS PAYMENT FOR RENT.

27. ON SEPTEMBER 2, 2000, IMMEDIATELY SUBSEQUENT TO RECIEVING THE $1,000.00 RENT PAYMENT, MS. FAILOR MAILED APPROXIMATELY $1,000.00 IN PERSONAL CHECKS TO VENDORS AS BILL PAYMENTS.

28. MS. FAILORS PERSONAL CHECKING ACCOUNT WILL REFLECT AN APPROXIMATE DEPOSIT OF $1,000.00 CASH ON/OR AROUND SEPTEMBER 5, 2000.

29. DURING THE MONTH OF AUGUST, 2000 THE RELATIONSHIP BETWEEN THE PLAINTIFF AND MS. FAILOR BECAME STRAINED.

30. DURING THE EARLY AFTERNOON OF SEPTEMBER 3, 2000 THE PLAINTIFF AND MS. FAILOR HAD A HEATED ARGUMENT IN WHICH THE PLAINTIFF MADE DISPARAGING REMARKS TO MS. FAILOR.

31. IMMEDIATELY AFTER THE SEPTEMBER 3rd ARGUMENT, MS. FAILOR TELEPHONED HER MOTHER AND STEP-FATHER, MARY LOU & PAUL KNIGHT.

32. PAUL KNIGHT IS LICENSED TO CARRY A CONCEALED WEAPON.

33. PAUL KNIGHT OWNS, AND ONCE IS KNOWN TO CARRY, A SMALL .380 CALIBER HANDGUN.

34. PAUL KNIGHT HAD SHOWN THE PLAINTIFF THE .380, AND SPECIFICALLY TOLD THE PLAINTIFF THIS WAS THE WEAPON HE CARRIED WITH HIM.

35. ON THE AFTERNOON OF SEPTEMBER 3, 2000, IMMEDIATELY AFTER RECIEVING THE PHONE CALL FROM MS. FAILOR, PAUL KNIGHT DROVE APPROXIMATELY TWENTY MINUTES TO MS. FAILORS LOCATION TO CONFRONT THE PLAINTIFF.

36. UPON PAUL KNIGHT'S ARRIVAL AT MS FAILORS RESIDENCE, THE PLAINTIFF AND PAUL KNIGHT HAD A PHYSICAL ALTERCATION.

37. On the afternoon of September 3, 2000 Plaintiff struck Mr. Paul Knight with his fists in self-defense.

38. Pursuant to Pa. C.S.A. 505 (Use of Force in Self-Protection) Plaintiffs limited use of force was justifiable.

39. Shortly after the physical altercation on September 3, 2000, Plaintiff was arrested and charged with aggravated assault; simple assault 18 Pa. C.S.A. 2701(a)(1); terroristic threats 18 Pa. C.S.A. 2706(a)(1); and harrassment.

40. On September 3, 2000 Plaintiff immediately told police that Paul Knight was in possession of a handgun, and physically intimated same by placing his hand behind him, in the small of his back at the waistband, as if to draw a weapon.

41. On September 3, 2000, immediately prior to being arrested, the Plaintiff was detained in the back of officer Roland Walkers police cruiser.

42. Officer Walker made a radio broadcast that either Paul Knight had a handgun, or that the Plaintiff said he (Paul Knight) had a handgun.

43. Plaintiff was taken into custody and held in the Chester County Prison.

44. Stouffer was appointed to handle Plaintiffs arraignment in criminal matter no. 4198-00

45. Plaintiffs initial contact with Stouffer was approximately twenty minutes prior to arraignment on September 27, 2000.

46. During Plaintiffs initial contact with Stouffer, Plaintiff detailed the events of September 3rd, the fact that Paul Knight had a handgun, and officer Walkers radio transmission mentioning a handgun

47. Stouffer failed to take any steps to preserve the recording of officer Walkers radio transmission.

48. During arraignment, Stouffer failed to attempt to solicit testimony from officer Walker regarding a radio transmission mentioning a handgun.

49. During arraignment, Stouffer failed to attempt to solicit testimony from Paul Knight regarding the location of his registered handgun during the incident of September 3, 2000.

50. Police Radio Transmissions are Routinely Recorded and Stored for Thirty Days.

51. Plaintiff was ~~irreparably~~ irreparably damaged by Stouffers failure to obtain, or preserve, a copy of Police Radio Transmissions from September 3, 2000.

52. During Arraignment, criminal matter no. 4198-00 was Bound over for Trial.

53. Paintin officially entered his appearance on Behalf of the Plaintiff on October 3, 2000.

54. Plaintiff attempted to contact Paintin by telephone on October 6, 2000 and Left a message on Paintin's voice mail.

55. Paintin did not return Plaintiffs october 6th phone Call, or attempt to contact Plaintiff in any way.

56. Plaintiff attempted to contact Paintin by Letter Dated october 18, 2000.

57. Paintin did not respond to Plaintiffs october 18th Letter.

58. Plaintiff attempted to contact Paintin by phone on october 24, 2000 and Left a message on Paintins voice mail.

59. Plaintiff attempted to contact Paintin by phone on November 8, 2000 and Left a message on Paintins voice mail.

60. Plaintin did not respond to Plaintiffs October 24th phone message or attempt to contact Plaintiff in any way.

61. Plaintin did not respond to Plaintiffs November 8th phone message or attempt to contact Plaintiff in any way.

62. Despite having entered his appearance on October 3, 2000, Plaintin refused to contact the Plaintiff until November 29, 2000, or approximately two months subsequent to entering his appearance.

63. In a case where his client is facing serious felony charges, Plaintin had a professional obligation to contact the Plaintiff immediately subsequent to entering his appearance.

64. Plaintin's failure to contact the Plaintiff for approximately fifty seven days subsequent to entering his appearance was in violation of the Rules of Professional conduct, Rule 1.4 Communication.

65. Plaintin failed to contact Plaintiff, aside from a notice of appearance, for approximately eighty seven days subsequent to Plaintiffs arrest.

66. There is no legally acceptable excuse for Plaintins failure to contact Plaintiff until November 29, 2000.

67. Plaintim was grossly negligent when failing to contact Plaintiff from October 3, 2000 through November 29, 2000.

68. During Plaintiffs Initial meeting with Plaintim on 11/29/00, Plaintiff detailed the circumstances surrounding his arrest.

69. On 11/29/00 Plaintiff informed Plaintim that he had Endorsed a Payroll check to Ms. Failor on 9/1/00.

70. Plaintiff informed Plaintim that Ms. Failor attempted to deposit his Payroll check into her checking account on 9/1/00

71. On 11/29/00 Plaintiff informed Plaintim that he cashed check No. 0002171 on 9/2/00 and handed Ms. Failor $ 1,000.00 cash as rent payment.

72. On 11/29/00 Plaintiff provided Plaintim with the name and telephone number of the company issuing check No. 0002171.

73. On 11/29/00 Plaintiff informed Plaintim that Paul knight had alcohol on his breath, appeared intoxicated, was in a rage, and was in possession of a handgun.

74. On 11/29/00 Plaintiff informed Plaintim that at the time of his arrest on 9/3/00, Plaintiff was only in possession of $ 25.00 cash.

75. On 11/29/00 Plaintiff informed Plaintim Prison Records would Reflect he was in possession of $ 25.00

76. SUBSEQUENT TO PLAINTIFFS INITIAL CONTACT WITH PAINTIM ON 11/29/00, PAINTIM REFUSED ANY CONTACT WITH PLAINTIFF FOR AT LEAST SIX WEEKS.

77. PLAINTIFF MULTIPLE ATTEMPTS TO CONTACT PAINTIM VIA COLLECT CALLS TO THE P.D.'s OFFICE.

78. NONE OF PLAINTIFFS COLLECT CALLS TO THE P.D.'s OFFICE WERE ACCEPTED.

79. PLAINTIFF ATTEMPTED TO CONTACT PAINTIM BY PHONE ON 12/7/00, AND LEFT A MESSAGE ON PAINTIMS VOICE MARY.

80. PAINTIM FAILED TO RESPOND TO PLAINTIFFS 12/7/00 MESSAGE.

81. ON 11/16/00 PLAINTIFF SERVED A PRO SE MOTION FOR CHANGE OF COUNSEL BASED ON IRRECONCILABLE DIFFERENCES TO THE COURT. VIA CERTIFIED MAIL.

82. PLAINTIFFS 11/16/00 MOTION FOR CHANGE OF COUNSEL WAS RECIEVED BY THE COURT.

83. PLAINTIFFS 11/16/00 MOTION FOR CHANGE OF COUNSEL WAS NEVER DOCKETED BY THE CLERK.

84. PLAINTIFF LEFT MESSAGE ON PAINTIMS VOICE MAIL ON 12/26/00.

85. PAINTIM FAILED TO RESPOND TO PLAINTIFFS 12/26/00 MESSAGE.

86. ON 1/10/01 CHESTER COUNTY PRISON COUNSELOR MRS. BROWN CONTACTED THE CLERK OF COURTS BY PHONE TO INQUIRE ABOUT PLAINTIFFS 11/16/00 PRO SE MOTION.

87. On 1/8/01 Plaintiff Contacted Ahdes To Complain About Plaintiffs Lack Of Representation And Refusal To Communicate with His Client. Contact via U.S. Mail

88. Ahdes Did Not Return Plaintiffs 1/8/01 Letter.

89. Plaintiffs 1/8/01 Letter To Ahdes Detailed Plaintiffs Failure To Communicate, Plaintiffs Pro Se Motion For Change Of Counsel, And Requested Ahdes Assistance.

90. On 1/23/01 Counselor Mrs. Brown Contacted The Clerks Office Regarding Plaintiffs 11/16/00 Motion. Left Message For A Mr. Schmidt.

91. On 1/23/01 Plaintiff Attempted To Contact Ahdes By Phone, Counselor Mrs. Brown Left Voice Message.

92. Plaintiff Attempted To Contact Pantin By Phone On 1/23/01, Left Message On Pantins Voice Mail.

93. Pantin Failed To Respond To Plaintiffs 1/23/01 Voice Message.

94. On 1/30/01 Ahdes Contacted Plaintiffs Counselor Mrs. Brown And Stated He Would Speak With Pantin.

95. On 2/6/01 Plaintiffs Counselor Again Contacted The Clerks Office And Left A Message For Ed Schmidt Regarding Plaintiffs 11/16/00 Motion.

96. Plaintiff Attempted To Contact Pantin By Phone On 2/13/02, Left Message On Pantins Voice Mail

97. Pantin Failed To Respond To Plaintiffs 2/13/02 Message.

98. Plaintiff had absolutely no contact whatsoever with Paintin from 11/29/00 through 2/20/01

99. During the period between 10/3/00 through 2/20/01, Plaintiff had approximately one hour of contact with Paintin.

100. During the period between 9/3/00 through 2/20/01, Plaintiff had approximate eighty minutes contact with an attorney.

101. Plaintiffs trial was originally scheduled to begin on 2/20/01.

102. As Plaintiff was arrested on 9/3/00, pursuant to Pa.R.Crim.P. Rule 600, Plaintiff would be eligible for release on nominal bail on/or about 3/2/01.

103. In a letter to Paintin dated 1/31/01, Plaintiff specifically instructed Paintin not to request a continuance.

104. Prior to 2/20/01, Plaintiff had forwarded numerous complaints to the trial judge informing her of the irreconcilable differences that existed between Plaintiff and Paintin, and inquired as to the status of Plaintiffs 11/16/00 motion.

105. Prior to 2/20/01, the trial judge (Cody) was aware of Plaintiffs complaints of irreconcilable differences and Paintins failure to communicate with his client, yet took no action.

106. Plaintiff had forwarded a comprehensive complaint to the head Judge of Chester County, Judge Riley, detailing Paintin's failure to communicate, the irreconcilable difference existing between Plaintiff and Paintin, and the Courts failure to docket or entertain Plaintiffs 11/16/00 motion.

107. Judge Riley did not respond to Plaintiffs complaint.

108. Immediately prior to Plaintiffs 2/20/01 hearing Paintin informed Plaintiff that the Commonwealth had yet to provide full discovery pursuant to Pa. R. Crim. P. 305.

109. Paintin further informed Plaintiff that he may request a continuance in order to obtain discovery material as yet to be provided by the Commonwealth.

110. Immediately prior to the 2/20/01 hearing, Plaintiff specifically instructed Paintin not to request a continuance.

111. Immediately prior to the 2/20/01 hearing, Plaintiff instructed Paintin, in the event Paintin disobey's Plaintiffs instruction not to request a continuance, to argue that a continuance to obtain discovery material be charged to the Commonwealth.

112. Immediately prior to the 2/20/01 hearing, Plaintiff informed Paintin that he would be asking the Judge to remove Paintin based on irreconcilable differences.

113. Immediately Prior To The 2/30/01 Hearing, Plaintiff Instructed Paintin To Support Plaintiffs Motion To Have Paintin Removed, or At Least Acknowledge The Irreconcilable Differences.

114. Immediately Prior To The 2/30/01 Hearing, Paintin Agreed To Acknowledge The Irreconcilable Differences That Existed And Support Plaintiffs Motion To Have Him Removed For Same.

115. On The Record During Plaintiffs 2/30/01 Hearing, The Court Heard Plaintiffs Motion To Have Paintin Removed.

116. While Entertaining Plaintiffs Motion, The Court Asked Paintin if He Had Anything To Add.

117. Paintin Declined To Comment.

118. The Court Asked Paintin if He Had Any questions For The Plaintiff, Paintin Said "No."

119. During Plaintiffs 2/30/01 Hearing, Paintin Stated To The Court " Mr. Hogan Supplies Me Recently with Some Medical Reports. However, I Anticipate He's going To Be getting Some Additional Information Regarding The Seriousness of The Injury. I'm Asking For A Continuance. I'm Not Prepared To go To Trial without Having The Information I Need Regarding The Injuries That Were Suffered. "

120. The Commonwealth (Mr. Hogan) acknowledged the tardy discovery.

121. Plaintiff failed to argue the continuance should be charged to the Commonwealth.

122. Plaintiff failed to even suggest the continuance be charged to the Commonwealth.

123. There is no reasonable strategic basis for Plaintiff failing to argue the continuance of 2/20/01 be charged to the Commonwealth for failing to provide complete discovery.

124. Plaintiff willfully conspired with the Commonwealth to have a continuance charged to the defense, thus avoiding Plaintiffs potential release pursuant to Pa. R. Cr. M. P. 600.

125. Plaintiff was severely prejudiced by the 2/20/01 defense continuance.

126. Plaintiff was grossly negligent in failing to argue the 2/20/01 continuance be charged to the Commonwealth.

127. Plaintiff intentionally failed to provide the Plaintiff with diligent representation when failing to argue the 2/20/01 continuance be charged to the Commonwealth.

128. During the 2/20/01 hearing, the Court abused it's discretion and denied Plaintiffs motion for new counsel.

129. THE SOLE REASON THE COURT CONTINUED PLAINTIFFS TRIAL WAS THE PLAINTIFFS CONTINUANCE REQUEST TO OBTAIN DISCOVERY FROM THE COMMONWEALTH.

130. CRIMINAL MATTER 4198-00 WAS CONTINUED UNTIL 3/26/01.

131. PLAINTIFF SECURED THE SERVICES OF PRIVATE COUNSEL, SAMUEL STRETTON, ON 3/22/01.

132. SAMUEL STRETTON ENTERED HIS APPEARANCE ON BEHALF OF THE PLAINTIFF ON 3/26/01.

133. DURING A HEARING ON 3/26/01, SAM STRETTON REQUESTED A ½ DAY CONTINUANCE TO ALLOW HIM TO HONOR A PRIOR COMMITMENT TO ARGUE BEFORE THE PA. SUPERIOR COURT.

134. PLAINTIFF WAS NOT PRESENT DURING THE 3/26/01 HEARING.

135. NONE OF THE COMMONWEALTHS WITNESSES WERE IN THE COURTHOUSE ON 3/26/01.

136. THE TRIAL WAS TO BEGIN ON THE MORNING OF 3/27/01.

137. DURING THE 3/26/01 HEARING, THE COURT SPECIFICALLY STATED THAT SAM STRETTON COULD PROCEED AS COUNSEL IF ABLE TO APPEAR FIRST THING IN THE MORNING OF 3/27/01.

138. ON 3/25/01 PLAINTIFF INFORMED PAINTIN THAT HE HAD RETAINED SAM STRETTON, AND INSTRUCTED PAINTIN TO STEP DOWN AS COUNSEL.

139. ON 3/25/01 PAINTIN SPECIFICALLY AGREED TO STEP DOWN AS COUNSEL.

140. During the Hearing of 3/26/01 the Court asked Paintin if He was Ready to Proceed. Paintin

141. Paintin Failed to Acknowledge the Irreconcilable Differences Existing Between the Plaintiff and Himself and Specifically Informed the Court He was Ready to Proceed to Trial.

142. Paintin willfully Disobeyed Plaintiffs Instructions to Step Down as Counsel.

143. Prior to the Hearing Held on 2/26/01, and again Prior to 3/26/01, Paintin Specifically acknowledged to the Plaintiff that He (Paintin) and the Plaintiff Had Irreconcilable Differences on How to Proceed.

144. Paintin owed a Duty of Loyalty to Plaintiffs Best Interest, Therefore a Duty to Acknowledge the Existing Irreconcilable Differences to the Court.

145. Paintin's First Loyalty was to the Plaintiff, Not the Public Defenders office or the Court.

146. Paintin willfully and wantonly Disregarded Plaintiffs Best Interests when Refusing to Acknowledge the Existing Irreconcilable Differences to the Court and Step Down as Counsel.

147. In Refusing the 1/2 Day continuance Requested By Sam Stretton, the Court Cited the Defense continuance granted on 2/20/01.

148. The court was fully cognizant of the irreconcilable differences between Plaintiff and Painton.

149. In forcing Plaintiff to proceed with Painton, the court willfully and knowingly promulgated the policy of allowing the Chester County Public Defenders office to provide substandard and ineffective counsel to their clients.

150. The court was aware that Painton had provided ineffective assistance of counsel in the past in his capacity as a Public Defender.

151. During the beginning of trial, Painton failed to ask the jury to find the Plaintiff not guilty of simple assault during defense opening statements.

152. During defense's opening statements, Painton failed to ask the jury to find the Plaintiff not guilty of terroristic threats.

153. During trial Painton failed to present any type of defense as to the charge of terroristic threats against Beth Failor.

154. During trial Beth Failor perjured herself when denying the Plaintiff gave her money on 9/2/00.

155. During trial Beth Failor perjured herself when specifically denying recieving $1,000.00 cash from the Plaintiff on 9/2/00.

156. A copy of plaintiffs canceled payroll check would have directly refuted Beth Failors testimony.

157. A copy of Beth Failors bank statement for the month of September, 2000 would have directly refuted her perjured testimony.

158. The entire case as to the charge of terroristic threats against Beth Failor relied solely on credibility determinations.

159. Plaintin intentionally failed to challange Beth Failors credibility by producing a copy of plaintiffs payroll check and a copy of Chester County Persons Inhm Booking sheet showing the amount of money plaintiff had on his possession at the time of his arrest.

160. During defense's closing argument, Plaintin actually stated to the jury " How was Doug (plaintiff) supposed to know that the gun was in Mr. Knights car?"

161. The above statement directly contradicted plaintiffs direct testimony, the defense's version of events, was the commonwealth's version of events, and was not supported by any tangible evidence whatsoever.

162. Plaintin's statement (paragraph 160) completely discredited plaintiffs testimony.

163. Plaintin intentionally discredited plaintiffs testimony regarding Mr. Knight having a hand gun in his possession.

164. Paintin's Representation throughout was in violation of Rule 1.1 of Pennsylvania Rules of Professional Conduct.

165. Paintin's Representation throughout was in violation of Rule 1.2 of Pennsylvania Rules of Professional conduct.

166. Paintin's Representation throughout was in violation of Rule 1.3 of Pennsylvania Rules of Professional conduct.

167. Paintin's Representation throughout was in violation of Rule 1.4 of Pennsylvania Rules of Professional Conduct.

168. Paintin's Representation throughout was in violation of Rule 1.7 of Pennsylvania Rules of Professional conduct.

169. Paintin violated Rule 1.16 of Pennsylvania Rules of Professional conduct.

170. There is no Reasonable Strategic Basis for Paintin Failing to Present a Defense as to Terroristic Threats against Beth Faylor.

171. Plaintiff was extremely Prejudiced by Paintin Failing to Present a Defense against Terroristic Threats.

172. There is a Reasonable Probability that the outcome of the Jury's verdict as to Terroristic Threats would Have Been Different had Paintin Presented a defense.

173. Plaintiff is innocent of the charge of Terroristic Threats.

174. Plaintiff testified that he Believed Paul Knight to Be in Possession of a Hand gun on 9/3/00.

175. THERE IS NO REASONABLE STRATEGIC BASIS FOR PANTIN TO STATE TO THE JURY "How WAS DOUG SUPPOSED TO KNOW THAT THE GUN WAS IN MR. KNIGHT'S CAR."

176. PLAINTIFF WAS EXTREMELY PREJUDICED BY PANTIN'S STATEMENT TO THE JURY, SUPRA AT 175.

177. THERE IS A REASONABLE PROBABILITY THAT THE OUTCOME OF THE JURY'S VERDICT AS TO SIMPLE ASSAULT WOULD HAVE BEEN DIFFERENT, BUT FOR PANTIN'S STATEMENT, SUPRA, AT 175

178. PLAINTIFF IS INNOCENT OF SIMPLE ASSAULT.

179. BUT FOR PANTIN'S INEFFECTIVE ASSISTANCE OF COUNSEL, PLAINTIFF WOULD HAVE BEEN AQUITTED OF ALL CHARGES.

180. ANDES KNEW PANTIN HAD PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL IN THE PAST.

181. ANDES KNEW PANTIN WAS A POOR ATTORNEY.

182. ANDES WAS AWARE OF THE IRREBSOLICI/NABLE DIFFERENCES EXISTING BETWEEN PANTIN AND PLAINTIFF.

183. ANDES WAS AWARE THAT PANTIN WAS REPRESENTING TOO MANY CLIENTS AT ONE TIME TO PROVIDE EFFECTIVE ASSISTANCE OF COUNSEL TO ALL OF HIS CLIENTS.

184. ANDES KNOWINGLY, WILLFULLY, AND WANTONLY PARTICIPATED AND PROMULGATED A ROUTINE CUSTOM OR HABIT OF KNOWINGLY ALLOWING CHESTER COUNTY PUBLIC DEFENDERS TO PROVIDE INEFFECTIVE ASSISTANCE OF COUNSEL, AND SPECIFICALLY KNEW PANTIN TO ROUTINELY PROVIDE INEFFECTIVE ASSISTANCE OF COUNSEL.

185. MERRICK WAS AT All TIMES Fully COGNIZANT THAT PAINTIFF is A POOR ATTORNEY, AND ROUTINELY PROVIDES INEFFECTIVE ASSISTANCE OF COUNSEL TO CLIENTS.

186. MERRICK WAS AT All TIMES Fully COGNIZANT THAT PAINTH'S REPRESENTATION OF CLIENTS HAS BEEN FOUND TO BE INEFFECTIVE ASSISTANCE OF COUNSEL IN APPELLATE COURTS.

187. MERRICK WAS AT All TIMES COGNIZANT THAT CHESTER COUNTY ASSISTANT PUBLIC DEFENDERS ARE ASSIGNED TO REPRESENT A GREATER NUMBER OF CLIENTS THAT THEY CAN REPRESENT EFFECTIVELY.

188. MERRICK, AS PUBLIC DEFENDER, WOULD AGREE THAT PAINTH'S FAILURE TO COMMUNICATE WITH PLAINTIFF FROM 10/3/00 THROUGH 11/29/00 IS NEGLIGENT AND UNACCEPTABLE.

189. MERRICK, AS PUBLIC DEFENDER, SHOULD AGREE THAT PAINTH'S FAILURE TO COMMUNICATE WITH PLAINTIFF FROM 10/3/00 THROUGH 11/29/00 IS NEGLIGENT AND UNACCEPTABLE.

190. MERRICK IS FULLY COGNIZANT THAT PAINTH'S FAILURE TO COMMUNICATE WITH PLAINTIFF FROM 10/3/00 THROUGH 11/29/00 VIOLATES THE PENNSYLVANIA RULES OF PROFESSIONAL CONDUCT, INCLUDING, BUT NOT LIMITED TO, RULES 1.3, 1.4, 1.1.

191. MERRICK IS FULLY COGNIZANT OF A HISTORY OF COMPLAINTS LODGED AGAINST MEMBERS OF THE PUBLIC DEFENDERS OFFICE, AND SPECIFICALLY PAINTH, FOR IRRECONCILABLE DIFFERENCES AND INEFFECTIVE COUNSEL.

192. MERRICK IS FULLY COGNIZANT THAT MANY ATTORNEYS EMPLOYED BY THE CHESTER COUNTY PUBLIC DEFENDERS OFFICE HAVE BEEN FOUND TO HAVE PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL IN THE APPELLATE COURTS.

193. MERRICK IS FULLY COGNIZANT THAT INEFFECTIVE ASSISTANCE OF COUNSEL RENDERED BY ATTORNEYS EMPLOYED BY THE CHESTER COUNTY PUBLIC DEFENDERS OFFICE IS SYSTEMIC AND INHERENT TO THE CHESTER COUNTY PUBLIC DEFENDERS OFFICE.

194. MERRICK PERSONALLY DIRECTS AND PARTICIPATES IN A PROMULGATED POLICY, ROUTINE, CUSTOM, OR HABIT OF ALLOWING TO MANY CLIENTS[1] ASSIGNED TO BE TO ATTORNEYS EMPLOYED BY THE CHESTER COUNTY PUBLIC DEFENDERS OFFICE, KNOWING THE ATTORNEYS CANNOT PROVIDE EFFECTIVE ASSISTANCE OF COUNSEL TO EACH CLIENT.

195. MERRICK KNOWINGLY AND WONTONLY DIRECTS AND PARTICIPATES IN A PROMULGATED POLICY, ROUTINE, CUSTOM, OR HABIT OF CONSPIRING WITH THE DISTRICT ATTORNEY OF CHESTER COUNTY, AND THE ASSISTANT DISTRICT ATTORNEYS OF CHESTER COUNTY, TO ENTER INTO PLEA AGREEMENTS AGAINST THE BEST INTEREST OF THE CRIMINAL DEFENDANT CLIENT IN AN EFFORT TO SAVE THE COSTS OF TRIAL AND TO EXPEDITE THE CRIMINAL DOCKET CASELOAD OF THE COURT, KNOWINGLY DENYING CRIMINAL DEFENDANTS

Sixth Amendment Right To Effective Counsel.

196. Merrick knowingly and wontonly Directs and Participates in a Promulgated Policy, Routine, Custom, or Habit of Assigning more Clients To Public Defenders Employed By Chester County Than The Attorney's Can Provide Effective Assistance of Counsel To In An Effort To Cut Costs, Above The Criminal Defendant Clients Right To Effective Counsel.

197. Merrick Utilizes Some Form of Case and/or Case Adjudication Tracking System To Monitor Attorney's Employed By P.D. office Performance.

198. The P.D. office Utilizes Some Form of Case and/or Case Adjudication System To Monitor Attorney's Employed By P.D. office Performance.

199. Merrick and/or The P.D. office Utilize Some Means To Track/Monitor/Evaluate Appellate Court Decisions That Have Found Attorney Error Committed By Attorney's Employed By The P.D. office.

200. Merrick and/or The P.D. office is Politically Motivated To Appease Judicial officers of The Chester County Court of Common Pleas And The Chester County District Attorney's office By Expediting Plea Arraignments, And Litigation, Against The Best Interests of Criminal Defendant Clients.

201. THE P.D. OFFICE IS EQUALLY CULPABLE TO PLAINTIFFS ALLEGATIONS CONTAINED HEREIN, II. 185-197, SUPRA.

202. DURING TRIAL PLAINTIFF TESTIFIED THAT PAUL KNIGHT WAS AN ALCOHOLIC, AND HAD BEEN DRINKING ON 9/3/00.

203. PRIOR TO TRIAL PLAINTIFF INSTRUCTED PAINTIN TO INVESTIGATE PAUL KNIGHTS CRIMINAL RECORD FOR INCIDENTS OF ALCOHOL AND/OR VIOLENCE RELATED CONTACTS WITH THE LAW AND/OR ARRESTS.

204. PAINTIN FAILED TO INVESTIGATE PAUL KNIGHTS CRIMINAL HISTORY.

205. DURING TRIAL PAINTIN INTENTIONALLY FAILED TO AGGRESSIVELY ARGUE THAT PAUL KNIGHT WAS AN ALCOHOLIC, WAS THE AGGRESSOR, AND IN FACT WAS IN POSSESSION OF A HANDGUN ON 9/3/00.

206. DURING TRIAL, COMMONWEALTH WITNESSES WALKER, KIMME PERJURED THEMSELFS WHEN TESTIFYING THAT THE PLAINTIFF FAILED TO INFORM THEM THAT PAUL KNIGHT HAD A HANDGUN ON HIS PERSON UNIT APPROXIMATELY FOUR HOURS SUBSEQUENT TO PLAINTIFFS ARREST.

207. PAINTIN INTENTIONALLY FAILED TO AGGRESSIVELY CROSS EXAMINE WALK AND KIMME.

208. PAINTIN INTENTIONALLY FAILED TO SPECIFICALLY STATE THAT WALKER AND KIMME PURJURED THEMSELVES.

209. Plaintiff Intentionally Failed To Aggressively Cross Examine Paul Knight

210. Plaintiff Intentionally Failed To Request That The Jury Find The Plaintiff Not Guilty Of Terroristic Threats During Defense's Closing Arguments, And Was Grossly Negligent For Same.

210. At The Close Of Trial On 3/28/01, The Plaintiff Was Found Guilty Of Simple Assault And Terroristic Threats Against Beth Faskel.

211. On/Or About 4/1/01 Plaintiff Withdrew Its Appearance On Behalf Of The Plaintiff.

212. On 4/19/01 Meanix Entered Its Appearance On Behalf Of The Plaintiff.

213. On 5/18/01 Plaintiff Was Sentenced To 12-24 Months For Simple Assault And 6-60 Months Incarceration For Terroristic Threats, Consecutive.

214. On 5/29/01 Meanix Filed Post Sentence Motions With The Lower Court Neglecting To Raise The Issue Of Plaintiffs Ineffectiveness For Failing To Present A Defense Against Terroristic Threats.

215. On 7/31/01 Meanix Filed Supplemental Post Sentence Motions, Again Neglecting To Raise The Issue Of Plaintiffs Ineffectiveness For Failing To Present A Defense Against Terroristic Threats.

216. On 8/27/01 The Lower Court Held An Evidentiary Hearing on Plaintiffs Post Sentence Motions, At which Plaintiff was Present.

217. Plaintiff Pictured Himself Before The Court on 8/27/01.

218. Plaintiff Has Yet To Obtain The Transcripts From The 8/27/01 Hearing.

219. On 9/24/01 The Lower Court Denied Plaintiffs Post Sentence Motions.

220. Meanix was grossly negligent, And Rendered Ineffective Assistance Of Counsel, when Failing To Raise The Issue Of Plaintiffs Ineffectiveness For Failing To Present A Defense against Terroristic Threats.

221. Meanix knowingly And willfully Participate In A Policy, Routine, Habit, Or Custom Of Providing Ineffective Assistance Of Counsel To Clients Appointed By The Court, Promulgated By The Defendants.

222. In The Trial Courts Opinion Denying Plaintiffs Post Sentence Motions Judge Cody Specifically Stated The Sole Reason For The Continuance Changed To The Defense on 2/26/01 was "In Order To Review Pertinent Medical Reports Recently Recieved And yet To Be Provided By The Commonwealth." (H.T. 2/20/01, 7) See Also; Opinion of Judge Cody (9/24/01, 4-5).

223. Immediately Subsequent to 9/24/01 Meanix withdrew its appearance on Behalf of the Plaintiff.

224. On 11/1/01 Wagner Entered His Appearance on Behalf of The Plaintiff, In the Lower Court.

225. In The Last week of October, 2001 The Plaintiff Began Employment as a Legal Aid in The Prison's Law Library.

226. Wagner Entered His Appearance on Behalf of The Plaintiff In The PA. Superior Court on 12/4/01

227. Plaintiffs Direct Appeal Before The Superior Court was Docketed as, No. 2089 EDA 2001.

228. Prior to Plaintiffs Brief Being Due in The Superior Court, Plaintiff Forwarded to Wagner a PA. Case Addressing The Strict construction of Penal Statutes, Com V. Kimmey, 777 A.2d 492 (2001), to Argue Cody's Misinterpretation And Erroneous Jury Instruction Concerning The misquoted Requirement Of Being Free From Fault when using Non-Deadly Force in Self-Protection. 18 Pa. C.S.A. 505

229. Pursuant to 18 Pa. C.S.A. 505 it is not a Requirement To Be Free From Fault when using Non-Deadly Force In Self-Protection.

230. THE PENNSYLVANIA RULES OF CONSTRUCTION OF STATUTES AND CONTROLLING PRECEDENT REQUIRE THAT ALL PROVISIONS OF PENAL STATUTES MUST BE STRICTLY CONSTRUED, AND THAT ANY AMBIGUITY CONTAINED WITHIN A STATUTE SHOULD BE INTERPRETED IN FAVOR OF THE ACCUSED AND AGAINST THE PROSECUTION. COM V. DRISCOLL, 485 PA. 99, 401 A.2d 312 (1979).

231. DURING TRIAL, THE COURT INSTRUCTED THE JURY THAT "IF A DEFENDANT EMPLOYS NON-DEADLY FORCE TO PROTECT HIMSELF, HIS USE OF FORCE MUST MEET THE FOLLOWING REQUIREMENTS AS WELL AS THE BASIC RULE. THE DEFENDANT MUST HAVE BEEN FREE FROM FAULT IN PROVOKING OR CONTINUING THE DIFFICULTY WHICH LED TO HIS USE OF FORCE." (N.T. 3/28/01, 16-20 EMPHASIS ADDED).

232. THE FREEDOM OF FAULT REQUIREMENT CONTAINED IN 18 PA.C.S.A. 505 APPLIES TO THE USE OF DEADLY FORCE ONLY.

233. THE TRIAL COURTS INSTRUCTION TO THE JURY THAT THE DEFENDANT FIRST BE FREE FROM FAULT, IN ORDER TO BE JUSTIFIED IN THE USE OF NON-DEADLY FORCE DURING THE COURSE OF SELF-PROTECTION AND/OR DEFENSE WAS REVERSIBLE ERROR AN ABUSE OF DISCRETION.

234. ALTHOUGH WAGNER ARGUED THAT THE COURT ABUSED IT'S DISCRETION BY GIVING THE ERRONEOUS JURY INSTRUCTION, HE INTENTIONALLY FAILED TO PROVIDE

Supporting case law directly on point that was provided to him by the plaintiff in the form of Com v. Kinney.

235. Wagner was ineffective for failing to argue case law directly on point.

236. Wagner's failure to argue Com v. Kinney was the proximate cause of the plaintiffs appeal as to the erroneous jury instruction being denied.

237. Excluding plaintiffs first phone call to Wagner, Wagners office refused to accept all of plaintiffs subsequent phone calls to discuss strategy of plaintiffs appeal.

238. Despite Wagner raising, and aggressively arguing, the lack in sufficiency of evidence to convict plaintiff of terroristic threats, Wagner was ineffective for failing to raise the issue of plaintiffs ineffectiveness for failing to present a defense against terr. threats.

239. Wagner filed plaintiffs/appellants brief in the Superior Court on 2/1/02.

240. Appellee's brief in Docket No. 2887 EDA 2001 was filed by Carroll and cst-Prisco on 3/4/02.

241. Appellee's brief knowingly and wantonly misrepresented the notes of testimony from plaintiffs trial and the opinions of the trial court. These misrepresentations are more aptly stated as lies.

242. APPELLEES BRIEF, REFERRING TO THE COURTS DENIAL OF THE CONTINUANCE REQUESTED ON 3/26/01, STATES " Judge CODY DENIED THE REQUEST, HOWEVER, SHE ADVISED THE DEFENDANT THAT SHE WOULD CONTINUE THE CASE FOR ONE TRIAL TERM TO PERMIT THE DEFENDANT TO HIRE A PRIVATE ATTORNEY. (APPELLEES BRIEF 3/4/02, 13) APPELLEES BRIEF HAD THE AUDACITY TO CITE THE OPINION OF JUDGE CODY ( 9/24/01, 5 ) TO SUPPORT THE BLATANT LIE.

243. THE NOTES OF TESTIMONY OF 3/20/01 AND THE OPINION OF JUDGE CODY OF 9/24/01 ARE COMPLETE DEVOID OF ANY LANGUAGE STATING THAT THE COURT ADVISED, OR CONTINUED THE CASE AS TO ALLOW THE PLAINTIFF AN OPPORTUNITY TO HIRE PRIVATE COUNSEL.

244. PLAINTIFF SPECIFICALLY INSTRUCTED WAGNER TO FILE A REPLY BRIEF TO COUNTER THE APPELLEES LIES.

245. RELYING ON THEIR MISREPRESENTATION OF THE RECORD, APPELLEES WENT ON TO SUPPORT CODY'S REFUSAL TO GRANT THE 3/26/01 CONTINUANCE WITH CASE LAW COMPLETELY DISTINGUSABLE FROM THE ACTUAL CIRCUMSTANCES OF THE RECORD/CASE.

245. WAGNER WAS INEFFECTIVE FOR FAILING TO FILE A REPLY BRIEF.

246. WAGNER WAS GROSSLY NEGLIGENT FOR FAILING TO FILE A REPLY BRIEF.

247. WAGNER ACTIVELY PARTICIPATED IN A PROMULGATED POLICY, ROUTINE, CUSTOM, OR HABIT OF RENDERING SUBSTANDARD AND INEFFECTIVE COUNSEL TO PLAINTIFF IN AN EFFORT TO MAXIMIZE THE PROFITABILITY OF THE SET FEE WAGNER RECIEVED FOR REPRESENTING THE PLAINTIFF.

248. ON 6/17/02, IN DOCKET NO. 2889 EDA 2001, THE SUPERIOR COURT AFFIRMED THE LOWER COURTS SENTENCE.

249. WAGNER WITHDREW ITS APPEARANCE.

250. ON 7/26/02 MORCINI ENTERED HIS APPEARANCE ON BEHALF OF THE PLAINTIFF.

251. ON 7/16/02 MORCINI FILED A PETITION FOR ALLOWANCE OF APPEAL ON BEHALF OF THE PLAINTIFF. SUPREME COURT NO. 948 MAL 2002.

252. MORCINI NEGLECTED/FAILED TO RAISE THE ISSUE OF PLAINTIFFS INEFFECTIVENESS FOR FAILING TO PRESENT A DEFENSE AGAINST TERRORISTIC THREATS, AND NEGLIGENT AND INEFFECTIVE FOR SAME.

253. MORCINI NEGLECTED/FAILED TO RAISE THE ISSUE OF APPELLEES MISREPRESENTATION OF THE RECORD IN THEIR BRIEF TO THE SUPERIOR COURT, MORCINI WAS NEGLIGENT AND INEFFECTIVE FOR SAME.

254. PLAINTIFF SPECIFICALLY INSTRUCTED MORCINI TO RAISE THE ISSUES CITED IN 252, 253 SUPRA.

## III. CAUSE(S) OF ACTION:

1ST

247. PLAINTIFF INCORPORATES By REFERENCE All OF THE ALLEGATIONS CONTAINED IN II. 15-246, SUPRA. PAINTIN INTENTIONALLY REFUSED TO COMMUNICATE WITH PLAINTIFF FROM 10/3/00 THROUGH 11/29/00, ACTING UNDER COLOR OF LAW/OFFICE/AUTHORITY. PAINTINS ACTIONS CONSTITUTED THE TORTS OF WILLFUL NEGLIGENCE; GROSS NEGLIGENCE; WONTON NEGLIGENCE; FAILURE OF DUTY TO ACT; FRAUDULENT INTENT; SUBSEQUENT NEGLIGENCE; AND LEGAL MALPRACTICE. PAINTIN ALSO COMMITTED THE FOLLOWING CONSTITUTIONAL TORTS: PAINTIN WILLFULLY, KNOWINGLY, AND WONTONLY CONSPIRED TO DEPRIVE THE PLAINTIFF OF HIS CONSTITUTIONAL RIGHTS GUARANTEED UNDER THE FIRST, FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION.

2ND

248. PLAINTIFF INCORPORATES HEREIN By REFERENCE All OF THE ALLEGATIONS CONTAINED IN II. 15-246, SUPRA. ACTING UNDER COLOR OF LAW/OFFICE/AUTHORITY, PAINTINS FAILURE TO HAVE NO MORE THAN ONE HOUR'S CONTACT WITH THE PLAINTIFF FROM 10/3/00 THROUGH 2/20/01 CONSTITUTES THE TORTS OF WILLFUL NEGLIGENCE; GROSS NEGLIGENCE; WONTON NEGLIGENCE; SUBSEQUENT NEGLIGENCE; FRAUDULENT INTENT; FAILURE OF DUTY TO ACT; AND LEGAL MALPRACTICE. PAINTIN ALSO COMMITTED THE FOLLOWING CONSTITUTIONAL TORTS: PAINTIN WILLFULLY, KNOWINGLY, AND WONTONLY CONSPIRED TO DEPRIVE THE PLAINTIFF OF HIS CONSTITUTIONAL

Rights guaranteed under the First, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

3rd 249. Plaintiff incorporates herein by reference all of the allegations contained in II. 15-246, supra. Acting under color of law/office/authority, Painter's failure to acknowledge the irreconcilable differences existing between himself and the plaintiff, and support Plaintiff's Pro Se motion for new counsel on 2/20/01 constituted the torts of: failure of duty to act; miscarriage of justice; willful and malicious injury; fraudulent intent; fraudulent representation; gross negligence; wonton negligence; subsequent negligence; and legal malpractice. Painter's actions also constituted the constitutional torts of willfully, knowingly, and wontenly depriving the plaintiff of his constitutional rights guaranteed under the First, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

250. Fourth cause of action: Plaintiff incorporates herein all of the allegations contained in II. 15-246, supra. Acting under color of law/office/authority, Painter's act of requesting a defense continuance on 2/20/01 against his clients specific instructions to the contrary constituted the torts of: fraudulent representation; gross negligence; wonton negligence; subsequent negligence; and legal malpractice.

Plaintiffs actions also constituted the constitutional torts of willfully, knowingly, and wantonly depriving the Plaintiff of his constitutional rights guaranteed under the First, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

251. FIFTH CAUSE OF ACTION: Acting under color of Law/office/authority, Plaintiffs failure to argue, or even suggest, the 2/20/01 continuance be charged to the Commonwealth constituted the torts of: Gross negligence; Wanton negligence; Subsequent negligence; Fraudulent Intent; Fraudulent Representation; Failure of Duty to act; and Legal malpractice. Plaintiffs actions also constituted the constitutional torts of willfully, knowingly, and wantonly depriving the Plaintiff of his constitutional rights guaranteed under the First, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

252. SIXTH CAUSE OF ACTION: Plaintiff incorporates herein all of the allegations contained in II 15-246, Supra. Acting under Color of Law/office/authority, Plaintiffs actions of meeting with the Plaintiff for a total of approx Six hours prior to trial, or from 10/3/00 through 3/27/01, constituted the torts of: Gross negligence; Wanton negligence; Subsequent negligence; Failure of Duty to act; and Legal malpractice. Plaintiffs actions also constituted the

Constitutional torts of willfully, knowingly, and wantonly Depriving the Plaintiff of his Rights guaranteed under The First, Fifth, Sixth, and Fourteenth amendments to The U.S. Constitution.

253. Seventh Cause of Action: Plaintiff incorporates by herein all of the allegations contained in II. 15-246, Supra. Acting under color of law/office/authority, Plaintiffs Failure to present any type of defense as to the charge of terroristic threats During Plaintiffs trial Constitutes the torts of: gross negligence; wanton negligence; Subsequent negligence; Failure of Duty to act; Fraudulent Intent; Fraudulent Representation; and Legal malpractice. Plaintiffs actions also Constitutes the Constitutional torts of willfully, knowingly, and wantonly Depriving the Plaintiff of his Rights guaranteed under The First, Fifth, Sixth, and Fourteenth amendments to the U.S. Constitution.

254. Eighth Cause of Action: Plaintiff incorporates herein all of the allegations contained in II. 15-246, Supra. Acting under color of law/office/authority, Plaintiffs Representation or idea of the Plaintiff in its entirety Constituted the torts of: gross negligence; wanton negligence; Subsequent negligence; Failure of Duty to act; Fraudulent Intent; Fraudulent Representation; and Legal malpractice. Plaintiffs actions also Constitutes the Constitutional torts of

willfully, knowingly, and wontonly DEPRIVING THE Plaintiff of His Rights guaranteed By THE FIRST, FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS To THE U.S. CONSTITUTION.

255. NINTH CAUSE OF ACTION: Plaintiff Incorporates Herein By REFERENCE All OF THE Allegations Contained in II. 15-246, SUPRA. ACTing under color OF Law/office/Authority, AHDES Committed THE TORTS OF: gross negligence; wonton negligence; Subsequent negligence; Failure OF Duty To Act; MISFEASANCE; MALFEASANCE; MISUSE OF Power; CONTRIBUTORY negligence; FRAUDULENT CONCEALMENT; FRAUDULENT REPRESENTATION; And FRAUDULENT INTENT. AHDES ACTIONS Also CONSTITUTED THE CONSTITUTIONAL TORTS OF willfully, knowingly, And wontonly Conspiring TO DEPRIVE THE Plaintiff OF His Rights guaranteed UNDER THE FIRST, FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS To THE U.S. CONSTITUTION.

256. TENTH CAUSE OF ACTION: Plaintiff Incorporates Herein All OF THE Allegations Contained in II. 15-246, SUPRA. ACTing under Color OF Law/office/Authority, MERRICK ACTIONS CONSTITUTED THE TORTS OF: gross negligence; wonton negligence; CONTRIBUTORY negligence; NONFEASANCE; misFEASANCE; MALFEASANCE; Failure OF Duty To Act; FRAUDULENT CONCEALMENT; FRAUDULENT REPRESENTATION; MISUSE OF OFFICE; MISUSE OF Power; MERRICKS ACTIONS Also CONSTITUTED THE CONSTITUTIONAL TORTS OF willfully, knowingly, And wontonly DEPRIVE THE Plaintiff

of his Rights guaranteed under the First, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

257. Eleventh Cause of Action: Plaintiff Incorporates herein all of the Allegations Contained in II. 15-246, Supra. The P.D.'s office Constituted the Torts of: Gross Negligence; Negligence; Contributory Negligence; Failure of Duty to Act; Fraudulent Concealment; Fraudulent Representation; and Constituted the Constitutional Torts of willfully, knowingly; and wantonly Depriving the Plaintiff of his Rights guaranteed under the First, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

258. Twelfth Cause of Action: Plaintiff Incorporates herein all of the Allegations Contained in II. 15-246, Supra. Acting under color of Law/office/Authority, All of the Defendants committed the Torts of: Gross Negligence; Wanton Negligence; Misuse of Power; Failure of Duty to Act; Misfeasance; Nonfeasance; Malfeasance; Malicious Prosecution; False Accusation; And/or Legal Malpractice; Fraudulent Concealment; And Fraudulent Representation. Defendants Also Committed the Constitutional Torts of knowingly, willfully, and wantonly Depriving the Plaintiff of his Rights guaranteed under the First, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

## IV. Relief:

WHEREFORE, FOR THE REASONS STATED HEREIN, THE PLAINTIFF RESPECTFULLY REQUESTS THIS HONORABLE COURT TO GRANT THE FOLLOWING RELIEF:

A. TRIAL BY JURY ON ALL ISSUES TRIABLE BY A JURY.

B. ACTUAL DAMAGES IN THE AMOUNT OF $ 300,000.00 (THREE HUNDRED THOUSAND U.S. DOLLARS).

C. PUNATIVE DAMAGES IN THE AMOUNT OF $ 500,000.00 (FIVE HUNDRED THOUSAND U.S. DOLLARS).

D. IRREPARABLE DAMAGES IN AN AMOUNT AS MAY BE DETERMINED BY THE COURT OR BY THE JURY.

E. FUTURE DAMAGES IN AN AMOUNT AS MAY BE DETERMINED BY THE COURT OR BY THE JURY.

F. PLAINTIFFS COST IN THE INSTANT ACTION.

G. SUCH OTHER RELIEF AS THE COURT MAY DEEM JUST, PROPER, AND EQUITABLE.

H. A DECLARATORY JUDGMENT STATING THE DEFENDANTS VIOLATED PLAINTIFFS CONSTITUTIONAL RIGHTS.

RESPECTFULLY SUBMITTED,

Douglas Murphy

Douglas Murphy

ES4677

1100 Pike ST

Huntingdon, PA  16654-1112

~~I hereby certify that the following document~~

## CERTIFICATE OF SERVICE

I, Douglas Murphy, HEREBY CERTIFY, THAT ON THIS 29TH DAY OF DECEMBER, 2003 I CAUSED THE FOREGOING 42 U.S.C. 1983 COMPLAINT TO BE SERVED UPON THE OFFICE OF THE CLERK FOR THE U.S. DISTRICT COURT, EASTERN DISTRICT, BY PLACING THE ORIGINAL COMPLAINT IN THE U.S. MAIL, FIRST CLASS POSTAGE PREPAID, IN HUNTINGDON, PA. ADDRESSED AS FOLLOWS:

U.S. DISTRICT COURT
OFFICE OF THE CLERK
2609 U.S. COURTHOUSE
601 MARKET ST
PHILA, PA   19107

FILED

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk.

By: Douglas Murphy
Douglas Murphy
ES4677
1100 PIKE ST
HUNTINGDON, PA   16654-1112

DATED: DECEMBER 29, 2003